STATE OF CONNECTICUT *v.* BRYANT K. ROLLINS
(14300)

O'Connell, Spear and Hennessy, Js.

Argued September 25, 1996—officially released January 28, 1997

*James B. Streeto*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, assistant state's attorney, with whom, on the brief, were *Kevin Kane*, state's attorney, and *Steven Carney*, deputy assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, following a plea of nolo contendere, of burglary in the third degree in violation of General Statutes § 53a-103. He claims that the trial court improperly (1) denied his motion to suppress his statement, (2) denied his motion to dismiss other cases in which nolles had been entered as part of a plea bargain, and (3) denied his motion to dismiss based on his attorney's conflict of interest. We reverse the judgment of the trial court.

The record discloses the following facts. While incarcerated on an unrelated offense, the defendant was arrested and charged with multiple counts of burglary and larceny. After the defendant was given *Miranda* warnings, he invoked his right to counsel. No attempt was made to interrogate the defendant at the time he was charged, and Attorney Nancy Radoff, a public

defender, was appointed to represent him. The defendant and Radoff met on April 15, 1992. Radoff instructed the defendant to remain silent until she had an opportunity to discuss the matter with the state's attorney. Despite her efforts over the next several weeks, Radoff was unable to obtain anything more definite from the state than a statement that a confession by the defendant would be taken into consideration.

Following another conversation between Radoff and the defendant, Radoff gave the state's attorney's office her permission to question the defendant. Consequently, on May 12, 1992, the police went to the jail to interrogate the defendant. After signing a waiver of rights, the defendant gave the statement that is the subject of the motion to suppress. Radoff was not present when the defendant waived his right to counsel or at the time he gave his statement.

The defendant thereafter filed a motion to suppress the statement given to the police on May 12, 1992, and a motion to dismiss alleging a conflict of interest within the public defender's office, both of which were denied. The defendant then entered into a plea bargain with the state. Under the terms of the plea bargain, the defendant agreed to enter a conditional plea of nolo contendere to one charge of burglary in the third degree, and, in exchange, the state agreed to enter a nolle prosequi on each of the remaining counts. The nolo plea was accepted, but at the state's request the nolles were not recorded by the trial court until the sentencing hearing. At the sentencing hearing, the defendant moved to dismiss the balance of the charges instead of allowing the state to nolle them. The court denied this motion.

## I

### BASIS OF APPELLATE REVIEW

As a threshold matter, the state contends that a nolo contendere plea under General Statutes § 54-94a[1] does not entitle a defendant to appellate review of the denial of a motion to suppress based on a *Miranda* violation. Section 54-94a expressly authorizes an appeal from, inter alia, the denial of a motion to suppress evidence based on a claim of involuntariness of a statement. *State* v. *Sebastian*, 41 Conn. App. 530, 534, 677 A.2d 437, cert. denied, 238 Conn. 906, 679 A.2d 365 (1996). The state argues, however, that the "involuntariness" referred to in § 54-94a is not the same kind of "involuntariness" relied on by the defendant.[2]

The state bases its argument on the portion of General Statutes § 1-1 (a) that provides that "technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."[3] The defendant's claim of

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and *evidence based on the involuntariness of a statement* or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution." (Emphasis added.)

[2] The defendant does not raise his claim under Practice Book § 4003 (a) because the rules of practice were not amended to include "involuntariness" as a ground for appeal until after this appeal was taken.

[3] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

involuntariness arises from his allegation that the police improperly reinstituted interrogation after he exercised his constitutional right to counsel following an advisement of rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The state's position is that because "involuntariness" is a word of art, and a statement may be taken in violation of *Miranda*, but still be perfectly voluntary. In support of this position, the state argues that the legislature intended "involuntariness" in § 54-94a to mean a statement that is the product of coercive police action that overcomes the will of the person who confesses. This definition would not include statements that were "involuntary" solely because they were not made in compliance with *Miranda* requirements.

Subsequent to the filing of the briefs in this case, our Supreme Court held in *State* v. *Piorkowski*, 236 Conn. 388, 406, 672 A.2d 921 (1996), that "the legislature intended the term 'involuntariness' in § 54-94a to encompass the two types of voluntariness issues . . . namely, whether (1) the police had complied with the prophylactic requirements of *Miranda*, and (2) the police had elicited the statement from the defendant by overcoming his will . . . ." It is clear that the law of this state now permits a defendant to seek review of a *Miranda* violation under the voluntariness clause of § 54-94a.[4]

## II

## MOTION TO SUPPRESS

The defendant claims that the trial court should have granted his motion to suppress his statement of May

---

[4] *State* v. *Piorkowski*, supra, 236 Conn. 399, held that failure to arraign the defendant promptly in accordance with General Statutes §§ 54-1c and 54-1g did not implicate the prophylactic *Miranda* rights and, therefore, did not give rise to a claim under § 54-94a.

12, 1992, because it was taken in violation of the fifth and fourteenth amendments of the United States constitution and article first, § 8, of the Connecticut constitution.[5] Specifically, the defendant claims that the incriminating statements were taken at a police initiated interrogation in the absence of counsel following an assertion of his right to counsel.

The United States Supreme Court held in *Edwards* v. *Arizona*, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), that an "accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until *counsel has been made available to him, unless the accused himself initiates further communication*, exchanges or conversations with the police." (Emphasis added.) Because the defendant in this case exercised his fifth amendment right to counsel, we must determine (1) whether counsel was made available to him within the meaning of *Edwards* and its progeny, and (2) whether the defendant actually initiated the further communication with the police.

A

We first ascertain the meaning of the phrase, "counsel have been made available." The state argues that an *Edwards* violation did not occur in this case because the defendant did not assert a "full" right to counsel but rather asserted only a "limited" right to talk with his attorney prior to speaking to the police. The United States Supreme Court does not recognize such a distinction in this context. *Minnick* v. *Mississippi*, 498 U.S. 146, 153, 111 S. Ct. 486, 112 L. Ed. 2d 489 (1990).

"The merit of the *Edwards* decision lies in the clarity of its command and the certainty of its application.

---

[5] Despite this allegation, the defendant did not pursue a state constitutional claim in his brief or in oral argument.

[The United States Supreme Court has] confirmed that the *Edwards* rule provides clear and unequivocal guidelines to the law enforcement profession . . . . Even before *Edwards* [the United States Supreme Court] noted that *Miranda's* relatively rigid requirements that interrogation must cease upon the accused's request for an attorney . . . has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible. This gain in specificity, which benefits the accused and the State alike, has been thought to outweigh the burdens that the decision in *Miranda* imposes on law enforcement agencies and the courts by requiring the suppression of trustworthy and highly probative evidence even though the confession might be voluntary under traditional Fifth Amendment analysis." (Citations omitted; internal quotation marks omitted.) *Minnick* v. *Mississippi*, supra, 498 U.S. 151.

Furthermore, "[c]onsultation is not a precise concept, for it may encompass variations from a telephone call to say that the attorney is en route, to a hurried interchange between the attorney and client in a detention facility corridor, to a lengthy in-person conference in which the attorney gives full and adequate advice respecting all matters that might be covered in further interrogations. And even with the necessary scope of consultation settled, the officials in charge of the case would have to confirm the occurrence and, possibly, the extent of consultation to determine whether further interrogation is permissible. The necessary inquiries could interfere with the attorney-client privilege." Id., 155. In an effort to make its position crystal clear, the United States Supreme Court articulated that "[w]hatever the ambiguities of our earlier cases on this point, we now hold that when counsel is requested, interroga-

tion must cease, and officials may not reinitiate interrogation *without counsel present, whether or not the accused has consulted with his attorney.*" (Emphasis added.) Id., 153.

In short, *Minnick* "establishes an irrebuttable presumption that a criminal suspect, after invoking his *Miranda* right to counsel, can *never* validly waive that right during any police-initiated encounter, even after the suspect has been provided multiple *Miranda* warnings and has actually consulted his attorney." (Emphasis in original.) Id., 156 (Scalia, J., dissenting); see *McNeil* v. *Wisconsin,* 501 U.S. 171, 176–77, 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991).

Because in the present case the defendant's counsel was not actually present, if the May 12, 1992 interrogation was initiated by the police, any statement made at that time should have been suppressed according to *Minnick.*

B

We next determine whether the post-*Miranda* interrogation in this case was police initiated or initiated by the defendant. The record discloses that the trial court specifically determined that the defendant's "attorney was aware of the fact that the police were going to speak to [him], *that the attorney gave them permission to speak to [the defendant] without her being there,* and that the attorney advised [the defendant] that the police were going to be [at the jail] to speak to [him] and that [the attorney] told [him] to make whatever deal [he] could with the police." (Emphasis added.) The trial court's findings concerning Radoff's knowledge of the situation and her instructions to the defendant do not support the conclusion that the defendant initiated the interrogation.

After the defendant refused to discuss any deals without consulting his public defender, the police initiated

the communication with Radoff, and she attempted to waive the defendant's rights for him by persuading him to talk with the police and "work out the best deal he could." The defendant merely responded to the actions of the police, and remained at all times entitled to the presence of his counsel during the interrogation.

The state may not prove that the defendant validly waived his *Miranda* rights "by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards* v. *Arizona,* supra, 451 U.S 484. *Edwards* requires that "the accused himself initiat[e] further communication, exchanges, or conversations with the police." Id., 485.

We conclude that the May 12, 1992 interview was initiated by the police and, because the defendant's counsel was not actually present, the trial court improperly denied the defendant's motion to suppress.

### III

### NOLLE PROSEQUI

Although our decision on the first issue will require a new trial, we must consider the defendant's second claim because it implicates the charges on which the defendant may be tried following our remand.

Following the denial of the defendant's motion to suppress, the state and the defendant entered into a plea agreement whereby the defendant would plead nolo contendere, pursuant to § 54-94a, to one count of burglary in the third degree and the state would nolle the remaining counts. At the time of plea, the state's attorney stated that he was entering nolles on all of the other cases but asked that the nolles not be recorded until sentencing.[6]

---

[6] "The Court: Okay. Now on all the other cases, nolles have been noted.
"[State's Attorney]: Yes, Your Honor, perhaps they shouldn't be recorded

The defendant relies on General Statutes § 54-56b, the gravamen of which is that a defendant has a right to a dismissal instead of a nolle if he objects to the nolle and declares that if the charge is not dismissed he prefers to go forward with a trial.[7] The pertinent part of § 54-56b provides that "[a] nolle prosequi may not be entered as to any count . . . if the accused objects . . . *and demands either a trial or dismissal* . . . ." (Emphasis added.) Here, the defendant does not argue that he was denied his right to a trial on the nolled charges following the denial of his request for dismissals. At sentencing, the state declared that it "intend[ed] to enter a 'nolle' per its agreement on all remaining files . . . ." When the defendant asked for dismissals instead of nolles, the state responded that it was ready to try all of the nolled cases.[8] The trial court denied the motion to dismiss the nolled charges on the ground that they were part of a plea agreement.

In any event, under the circumstances of this case, the defendant has not been harmed. If he still wants trials on the twenty-four nolled cases, he may ask for

---

until that October date . . . .

"The Court: Yes.

"[State's Attorney]: That is the intent.

"The Court: All right. Nolles are noted, but not officially entered until the day of sentencing, which will be when?

"Court Clerk: October 19th."

[7] General Statutes § 54-56b provides: "Right to dismissal or trial on nolle. A nolle prosequi may not be entered as to any count in a complaint or information if the accused objects to the nolle prosequi and demands either a trial or dismissal, except with respect to prosecutions in which a nolle prosequi is entered upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or has been destroyed and that a further investigation is therefore necessary."

[8] "The Court: . . . . Incidentally, for the record, are you ready to try any of these cases if you had to . . . ?

"[State's Attorney]: Yes, Your Honor, the state would be ready on all matters.

"The Court: Okay. All right. Then the motion to dismiss is denied."

them when this case returns to the trial court pursuant to our remand of the first issue.[9]

## IV

## CONFLICT OF INTEREST

Because our disposition requires a new trial, we do not reach the defendant's third claim.

The judgment is reversed only as to the conviction of burglary in the third degree and the cases are remanded for a new trial.

In this opinion the other judges concurred.

---

[9] We note that because the defendant's nolo contendere plea to one count of burglary in the third degree was entered as part of a single plea bargain that encompasses both a sentencing agreement and an agreement that the state enter nolles with respect to other counts, our conclusion and remand for a new trial necessarily unravels the entire plea bargain. *State* v. *Carter*, 43 Conn. App. 555, 563 n.5, 685 A.2d 1129 (1996); *State* v. *Alicea*, 41 Conn. App. 47, 60 n.14, 674 A.2d 468 (1996).