## STATE OF CONNECTICUT *v.* ANTHONY CARTER
### (AC 14993)

O'Connell, C. J., and Dupont and Healey, Js.

Argued February 23—officially released April 21, 1998

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Christopher L. Morano*, supervisory assistant state's attorney, and *Judith Rossi*, assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant appeals from the judgment of conviction, following guilty pleas, of violation of the Corrupt Organizations and Racketeering Activity Act (CORA), General Statutes § 53-395 (b) and (c), conspiracy to violate CORA in violation of General Statutes §§ 53a-48 and 53-395 (b) and three counts of sale of narcotics in violation of General Statutes § 21a-277 (a).

This appeal was previously before this court in *State v. Carter*, 43 Conn. App. 555, 685 A.2d 1129 (1996). The Supreme Court reversed the judgment of this court, and the appeal is now before us on remand; see *State* v.

*Carter*, 243 Conn. 392, 703 A.2d 763 (1997);[1] to determine the defendant's claim that the trial court's use of unreliable information at his sentencing hearing violated his right to due process of law. More specifically, the defendant argues that the trial court improperly listened to unsworn statements from two police officers and denied the defendant's request to cross-examine the officers.

The defendant's claim is based on the following facts. As part of a plea bargain, the defendant pleaded guilty to each of the crimes in question, in return for which the state nolled several other charges. At the sentencing hearing, Detective Arthur Levich and Sergeant Christopher Lyons of the Hartford police department made unsworn statements to the court at the state's request.

Levich narrated a videotape he had made of the events leading to the crimes for which the defendant was being sentenced. The trial court limited Levich's narration to the three specific drug transactions to which the defendant had pleaded guilty. These three sales were made to undercover police officers. The narration consisted of comments such as: "[The defendant] is speaking with an undercover officer in the vehicle here. . . . At the end of the conversation . . . [the defendant] . . . hands in the bag of narcotics, he is paid and you will see him walking away as he takes the money from the window. . . . [The defendant] puts [the money] in his pocket there and he walks back to the group, which are other gang members of [Twenty-Love]." Lyons was the supervisor of the Hartford police department's gang task force. His statement explained why this particular CORA investigation was instigated and included a description of the activities of the Twenty-Love gang and the defendant's role in those activities.

---

[1] The issue decided by the Supreme Court is irrelevant to the issue now before us.

At the sentencing hearing, the defendant asked that the officers be sworn and that he be allowed to cross-examine them. The trial court denied both requests, noting that the officers were not being asked questions under oath and that they were not testifying about the facts, but were merely explaining the CORA investigation and the videotape. The trial court also indicated that it was within the court's discretion to consider a broad range of information to assist it in weighing its options and imposing a proper sentence.

The defendant contends that permitting the officers to be heard at the sentencing hearing violated Practice Book § 919, now Practice Book (1998 Rev.) § 43-10,[2] because that rule does not provide for any person other than the state, the defendant and the victim to make statements at a sentencing hearing. We do not agree. Practice Book § 919 merely assures that the state, the defendant and the victim will have an opportunity to be heard. We do not construe it as restricting the trial court's discretion to receive information from other persons or sources that may assist the court in imposing an appropriate sentence.

The defendant next argues that the trial court's decision to allow the officers to give unsworn statements

---

[2] Practice Book § 919, now Practice Book (1998 Rev.) § 43-10, provides in relevant part: "Before imposing a sentence or making any other disposition after the acceptance of a plea of guilty or nolo contendere or upon a verdict or finding of guilty, the judicial authority shall . . . conduct a sentencing hearing as follows:

"(1) The judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition . . . .

"(2) The judicial authority shall allow the victim and any other person directly harmed by the commission of the crime a reasonable opportunity to make, orally or in writing, a statement with regard to the sentence to be imposed.

"(3) The judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence. . . ."

without being subject to cross-examination violated his right to due process of law. This claim is without merit.

" 'Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial.' " *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986). Moreover, "both the United States Supreme Court and our Supreme Court have recognized that a defendant is *not* entitled, under the due process clause, to cross-examine witnesses in a sentencing hearing. *Williams* v. *New York*, [337 U.S. 241, 250, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949)]; *State* v. *Harmon*, [147 Conn. 125, 129, 157 A.2d 594 (1960)]." (Emphasis in original.) *State* v. *DeJesus*, 10 Conn. App. 591, 595, 524 A.2d 1156 (1987).

In sentencing an individual who has been convicted of a crime, "judges may consider a wide variety of information. . . . Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance. . . . It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. *United States* v. *Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972)." (Citations omitted; internal quotation marks omitted.) *State* v. *Huey*, supra, 199 Conn. 127; *State* v. *DeJesus*, supra, 10 Conn. App. 600.

The trial court, however, does not have unfettered discretion. "As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. . . . As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to

fashion his ultimate sentence, an appellate court should not interfere with his discretion." (Citation omitted.) *State* v. *Huey,* supra, 199 Conn. 127; *State* v. *DeJesus,* supra, 10 Conn. App. 600–601.

The statements of Levich and Lyons clearly met the requirement of having some minimal indicium of reliability. They were based on the officers' personal experience and observations. Levich's statement was limited to narrating portions of a videotape that he had filmed, which documented crimes to which the defendant had pleaded guilty. Lyons' statement focused on his personal knowledge regarding the activities of the Twenty-Love gang and the defendant's role in those activities.

The reliability of the officers' statements was further demonstrated by the defendant himself, who corroborated critical aspects of the officers' statements, such as the defendant's association with the Twenty-Love gang. Although the defendant maintained that he was not a member of the Twenty-Love gang, he admitted to "acting in concert" with that gang. Moreover, as the trial court noted, the defendant pleaded guilty to the CORA violation after "[i]t was significantly explained to him, very [painstakingly] explained to him that his association with the [Twenty-Love] gang was the basis of the CORA conviction."

Finally, the defendant had ample opportunity to rebut any parts of the officers' statements that he disputed. The defendant and his grandmother both spoke on his behalf at the sentencing hearing. The trial court also had before it letters in support of the defendant, including one from a high school teacher. Under these circumstances, the defendant's right to due process of law was not violated.

The judgment is affirmed.

In this opinion the other judges concurred.